SARBECKER, Plaintiff in error, vs. THE STATE, Defendant in error.

*January 13 — February 2, 1886.*

*Sale of chattels: Where title passes: Intoxicating liquors: Sale without license.*

Where the contract is silent on the subject, and there is nothing in the transaction indicating a different intention, and a manufacturer residing in one city receives through his agent residing in another an order for goods (in this case intoxicating liquors) from a customer there, and fills the order by delivering the goods to a common carrier at the place of manufacture, consigned to such customer at his place of residence, or to such agent for him, the sale is complete and the title passes at the place of shipment, even though the customer on receiving the goods at his place of residence pays to such agent there the purchase price.

ERROR to the Circuit Court for *Dane* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

October 9, 1884, a complaint was made to and filed with H. A. Hoverson, a justice of the peace in the city of Stoughton, Dane county, Wisconsin, for the arrest of the plaintiff in error, of which the following is a copy, to wit: "*State of Wisconsin, Dane County:* — *In Justice's Court.*

"T. C. Lund of said county, being duly sworn and examined on oath by and before H. A. Hoverson, a justice of the peace of said county, makes complaint, and says that he has good reason to believe *George Sarbecker* did, on the 4th day of October, A. D. 1884, at the city of Stoughton, in said county, vend, sell, deal, and traffic in, and for the purpose of evading the law of this state give away, spirituous, malt, ardent, and intoxicating liquors and drinks, without first having obtained a license therefor according to the law of this the state of Wisconsin, contrary to the form of the statute in such cases made and provided,

and against the peace and dignity of the state of Wisconsin, and prays that the said *George Sarbecker* may be arrested and dealt with according to law.          T. C. LUND.

" Subscribed and sworn to before me this 9th day of October, A. D. 1885.

"H. A. HOVERSON, Justice of the Peace."

Thereupon the said justice, on the same day, issued his criminal warrant for the arrest of the plaintiff in error, reciting all that was contained in said complaint, and the said plaintiff in error was, on the same day, thereupon arrested and brought before said justice, and then and there pleaded "not guilty." Thereupon the said prisoner was tried before said justice and a jury, who returned a verdict of " guilty," and he was thereupon adjudged to pay a fine and the costs of prosecution, and in default be imprisoned for thirty days, unless said fine and costs be sooner paid, or until discharged by due course of law. From that judgment the said *Sarbecker* appealed to the circuit court for Dane county, and was retried in said last-named court, by a jury, who returned a verdict of " guilty;" and the said circuit court thereupon sentenced and rendered judgment against said prisoner.

For the plaintiff in error there was a brief by *Fethers, Jeffris & Smith,* and oral argument by *Mr. Fethers.*

*H. W. Chynoweth,* Assistant Attorney General, for the defendant in error.

CASSODAY, J. There was evidence tending to show that during the times in question Gezelschap & Knipp were brewers of beer at Janesville and had a regular license from the United States as such; that during the same time the plaintiff in error was their agent at the city of Stoughton, where he resided, and took orders in that city from consumers there for beer so manufactured at Janesville by the brewers named; that such orders were filled by said

brewers sending by railway beer so manufactured by them, in the original packages, that is to say, in four gallon kegs, each of which had their names branded thereon and a United States revenue stamp attached thereto, and was so sent by said brewers either directly to such consumers or to their said agent, to be by him delivered to such consumers. It is conceded that neither the plaintiff in error, nor any person residing in the city of Stoughton during the times in question, had any license to sell beer therein in any quantity whatever.

It is urged by the learned counsel for the plaintiff in error that under the statute (sec. 1548, R. S.) of this state, as construed by this court in *Scanlan v. Childs*, 33 Wis. 663, the manufacture of beer is a lawful business without any license from the state or any municipality, and, as such, gives to the manufacturer the implied right, without any license, to sell the beer so manufactured, in such original packages, directly to the consumers, as well as to licensed dealers; and that this right is not abridged by the excise law of the state. It is further claimed that the things which the manufacturers had the right to do themselves they had the right to do through their agent residing in the city of Stoughton; and hence that *Sarbecker*, in taking and forwarding orders, and receiving and delivering beer in kegs, and receiving the pay therefor, was acting as the mere agent of the brewers, and therefore not in violation of the statute, notwithstanding he had no license. The learned trial judge held that the case cited had no application to sales so made by a brewer to a consumer, but only to licensed dealers, or, at most, dealers. The fact that the complaint is general, alleging no specific sale to any particular individual,— and the further fact that as to one of the kegs mentioned in the testimony it does not appear, at least not clearly, whether *Sarbecker* acted as the agent of the brewers named in taking the order, making the delivery,

and receiving the pay, or for himself in making an independent sale,— renders it unnecessary, if not improper, for us now to determine any of the questions above suggested. *Sarbecker* was not sworn on the last trial, and the capacity in which he acted was, at most, a matter of inference.

The court, among other things, instructed the jury that " the only question for you now is to find whether you believe, from the testimony, that the defendant did sell beer upon the 4th of October last to anybody; and, if you so find, it is your duty to reflect your convictions by your verdict, and that should be a verdict of guilty. . . . And I do not think, gentlemen, if you should find that he sold the beer and actually delivered it, or any of it, in the city of Stoughton, and received pay for it on the day in question, you need to trouble yourselves anything about where it was manufactured, or whether or not he was the agent of the manufacturers in Janesville." The court also refused to " instruct the jury that if an order was given to an agent in Stoughton to have beer shipped from Janesville, Wisconsin, by a principal, the sale takes place in Janesville, and not in Stoughton." Nothing was said to the jury in substance or effect like the instruction rejected.

Was there any error in these rulings? After a careful examination of authorities, we are constrained to hold that where the contract is silent on the subject and there is nothing in the transaction indicating a different intention, and a manufacturer residing in one city receives through his agent residing in another an order for goods from a customer there, and fills the order by delivering the goods to a common carrier at the place of manufacture, consigned to such customer at his place of residence, or to such agent for him, the sale is complete, and the title passes at the place of shipment, even though the customer on receiving the goods at his place of residence pays to such agent there the purchase price. *Fragano v. Long,* 4 Barn. & C. 219; *Ranney v.*

*Higby,* 4 Wis. 154; *Somers v. McLaughlin,* 57 Wis. 364; *Comm. v. Farnum,* 114 Mass. 267; *Janney v. Sleeper,* 30 Minn. 473. In the Massachusetts case here cited it was in effect held not to be a violation of the statute "forbidding unlicensed hawking and peddling, for the agent of a sewing-machine company to go from place to place exhibiting a sample machine, and soliciting orders to be filled by the company, and delivering upon conditional contracts. of sale the machines sent to him by the company in answer to such orders, although occasionally he fills an order immediately by the delivery of the sample, and although once, contrary to his custom, he makes an absolute sale." See, also, *City of Kansas v. Collins,* 8 Pac. Rep. (Kan.), 865.

The same principle has frequently been applied in the sale of liquors to a purchaser residing in a place where all such sales, or all such sales without license, were prohibited. *Garbracht v. Comm.* 96 Pa. St. 449; *Finch v. Mansfield,* 97 Mass. 89; *Abberger v. Marrin,* 102 Mass. 70; *Brockway v. Maloney,* 102 Mass. 308; *Dolan v. Green,* 110 Mass. 322; *Frank v. Hoey,* 128 Mass. 263; *Hill v. Spear,* 50 N. H. 253; *S. C.* 9 Am. Rep. 205; *Tegler v. Shipman,* 33 Iowa, 194; *S. C.* 11 Am. Rep. 118; *Boothby v. Plaisted,* 51 N. H. 436; *S. C.* 12 Am. Rep. 140; *Shuenfeldt v. Junkermann,* 20 Fed. Rep. 357. Thus, in the Pennsylvania case cited, "a traveling agent for a wholesale licensed liquor dealer doing business in Erie solicited and received orders for whisky in Mercer county. The orders were transmitted to his employer in Erie, and by him the whisky was shipped by freight or express, consigned to the parties respectively from whom the orders were obtained. The agent was indicted in Mercer county for selling liquor without a license, and was tried, convicted, and sentenced. *Held,* that he was improperly convicted, as Erie was the place of delivery, and in law the sales were made there and not in Mercer county." So, in the latest Massachusetts case cited, it was held that

"if an order for intoxicating liquors is given by a person in A to an agent of a dealer who has a license to sell such liquors in B, and received by the agent subject to his principal's approval, and the liquors, which were sold on credit, are put up by the seller, marked with the buyer's name, directed to him at A, and delivered to the carrier in B, it is a sale of the liquors in B." In the Iowa case cited it was held that "if an agent of a person engaged in the sale of liquors in another state merely takes an order of a person residing in Iowa for a quantity of liquor to be forwarded to him, which order is made upon and subject to the approval or disapproval of his principal, the sale will be regarded as made in the state where the principal resides, and the case will not fall within the statute of Iowa making void contracts for or on account of intoxicating liquors." In the most recent New Hampshire case cited the defendant residing in that state, where the sale would have been un_lawful, "ordered, by sample, spirituous liquors of the traveling agent of a firm in another state where the sale was lawful, and they were put up, marked to the purchaser, and shipped from the firm's place of business. *Held*, that the sale was made and the contract complete at the place of shipment, and that an action for the price could be maintained in New Hampshire."

The quotations made sufficiently illustrate the rule stated, and the reasons for it. Under that rule we must hold that the refusal to instruct the jury in substance as requested, and the unqualified instructions given, were error.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.

See *State v. O'Neil*, 2 Atl. Rep. 586, and note; 33 Alb. L. J. 122; *U. S. v. Cline*, 26 Fed. Rep. 515, and note.— REP.